46 So.2d 8

**ROLLS v. STATE.**
6 Div. 834.

Court of Appeals of Alabama.
April 25, 1950.

284

Wm. Conway, of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., and Alfred W. Goldthwaite, Asst. Atty. Gen., for the State.

HARWOOD, Judge.

This appellant stands convicted of manslaughter in the second degree, under an indictment charging the appellant with manslaughter in the first degree in that he killed Joseph J. Price by striking him with an automobile.

The evidence presented by the State tends to show that the deceased and his friend Thomas Utter had ridden their motor bikes out the Birminham-Montgomery highway. One of the motor bikes had broken down, and they were pushing the bikes along the highway back to Birmingham.

Utter testified that at a point about five miles south of Birmingham they were thus proceeding, the deceased being about ten feet ahead of Utter. It was a dark night and Utter could not see his companion.

Cars were passing, and Utter heard a noise that "sounded like a rock or stick flew up under the fender and hit," and he noticed a car pass at this time but did not look up.

Utter walked a few steps after this and came upon deceased's motor bike lying at the edge of the highway, partly on the paved portion. He could not locate the deceased, and after searching and calling for him he went to a nearby house occupied by Mr. and Mrs. W. C. Breneman.

Mrs. Breneman answered Utter's knock on the door and noted that the time was ten minutes to eleven o'clock.

Mr. Breneman secured a flashlight and he and Utter returned to the highway to search for the deceased. They found his body some seventy-five feet north of the place where his motor bike was located. The body was three to five feet off the highway in a ditch, and deceased appeared to be dead when they located him.

C. T. Flummer, a witness for the State, testified that on the day the deceased was killed he worked at Hillcrest, an eating place on the Birmingham-Montgomery highway about twelve miles south of Birmingham. The appellant had been in and out of Hillcrest since about four o'clock that afternoon, finally departing at about twenty minutes to eleven. Appellant had had drinks during his visits to Hillcrest, and at the time of his final departure was drunk. Immediately after appellant left this witness heard flying gravel striking against the building.

Ralph O. Brown testified for the State that he operated a sandwich shop across the highway from Hillcrest. On the night deceased was killed he was standing in front of his place at about ten-thirty o'clock, he would judge. He observed the appellant, whom he had known about a year, leave Hillcrest and enter a dark blue or green sedan type Frazer or Kaiser automobile. Appellant walked with an unsteady manner. When he started his automobile the wheels spun in the gravel, throwing it against the Hillcrest building. After reaching the pavement appellant drove off at a fast rate toward Birmingham.

On cross examination this witness stated that he "imagined" around fifty cars passed his place of business that night between ten-thirty and eleven o'clock.

Later on the night that appellant was killed, that is at 1:26 A. M. on the morning of October 12, 1948, someone identifying himself as C. J. Rolls called the Homewood police and reported his car had been stolen. The caller could not remember the license number of the stolen car, nor did he know where it was when stolen.

Later that morning a four door Kaiser sedan, license number 1-D-9453 was located by police off of the Berry road, about four miles west of the place where deceased was found dead. The car was badly burned, with the exception of the right front por-

tion. The right front portion of the fender and headlight was badly smashed. A portion of the wiring, with a piece of glass attached, was removed from the right front headlight by an officer and later turned over to C. D. Brooks, Assistant State Toxicologist.

Further evidence introduced by the State tended to show that license tag 1-D-9453 for 1948 was for a 1947 model Kaiser four door sedan automobile, the owner being listed as C. J. Rolls.

C. D. Brooks, a witness for the State, testified that for ten years he has been employed as a Toxicologist by the State Department of Toxicology and Criminal Investigation. During his employment he has investigated many automobile collision cases, and has made many comparisons of glass fragments.

On October 14, Mr. Brooks went to the scene of the accident now under consideration. There he found some glass fragments. The officer who had removed the glass fragments and wire from the burned car above mentioned turned these objects over to Brooks. Mr. Brooks testified that he carried all of these glass pieces to his laboratory where he compared them. Over appellant's objection he was permitted to state that these pieces of glass were originally from the same piece of glass. This witness further demonstrated to the jury how the pieces of glass matched by fitting them together before the jury.

At the close of the State's case the appellant made the following motion: "The defendant moves to exclude the evidence in this case on the ground that the corpus delicti has not been proven, and on the further ground that the evidence is wholly insufficient to sustain either a verdict of manslaughter in the first degree or manslaughter in the second degree as charged in the indictment; and the State has wholly failed by circumstantial evidence or otherwise to prove or connect the defendant with the offense; that the testimony and evidence is wholly insufficient to show that the defendant Cecil J. Rolls and C. J. Rolls is one and the same person; that the evidence is wholly insufficient to show that

Cecil J. Rolls was the owner of the automobile which is alleged to have collided with the deceased, Joseph J. Price."

This motion was denied, and the defense thereupon rested.

While there was no testimony tending to show the condition of deceased's body as to wounds, etc., we think the fact that deceased's motor bike was found in a damaged condition at the edge of the paved portion of the highway only a few seconds after his companion, following only a few feet behind, had heard a noise as though some object had struck a car which was then passing, and that deceased's body was found shortly thereafter some seventy feet up the highway in a nearby ditch, was sufficient for the jury to reasonably infer that the deceased had been struck by a passing vehicle and that his death resulted therefrom.

■ Further, a consideration of all the evidence above set out leads clearly to the conclusion that it was sufficient to justify the inference by the jury of the establishment of the corpus delicti, and that the court therefore correctly refused appellant's request for the affirmative charge. Kozlowski v. State, 32 Ala.App. 453, 27 So.2d 811, certiorari granted, but conclusion as to sufficiency of evidence from which jury could infer corpus delicti approved, 248 Ala. 304, at page 307, 27 So.2d 818; McKee v. State, 33 Ala.App. 171, 31 So.2d 656, certiorari denied 249 Ala. 433, 31 So.2d 662.

■ The court properly permitted the witness Brooks, qualified by training and many years experience as a toxicologist and criminal investigator, to give his opinion as to the matching qualities of the glass fragments found at the scene of this collision and those taken from the damaged right headlight of appellant's car. These fragments had been taken by Brooks to his laboratory and there compared. Certainly the information thus obtained was not of a type commonly possessed by the ordinary man and was well within the limits of expert testimony. Its probative value was of unquestioned assistance to a jury considering this case. Since Brooks

possessed personal knowledge of the matter about which he was testifying he could properly give his opinion thereon without detailing to the jury all the procedures leading to his conclusions. The value and basis of his opinion testimony could be tested by cross examination. Birmingham Amusement Co. v. Norris, 216 Ala. 138, 112 So. 633, 53 A.L.R. 840.

Appellant's counsel strenuously insists that the court erred in denying his motion to exclude the evidence because of the State's failure to show that Cecil J. Rolls, and C. J. Rolls, in whose name the burned car was registered, and from which the glass fragment was taken, was one and the same person.

■ Counsel insists that the absence of such showing constitutes a failure of proof as to a material element of the case. With such insistence we cannot agree. Conceding, without deciding, that a registration of an automobile in the name of "C. J. Rolls" would be inadmissible in the face of a proper objection in the absence of proof that "C. J. Rolls" and "Cecil J. Rolls" were one and the same person, the evidence of registration was admitted in this case without objection. Being thus before the jury, it was within their province to reasonably infer that "C. J. Rolls" and "Cecil J. Rolls" were one and the same person, and prima facie tended to establish this point. While this proof may be said to be lacking in conclusive force, it is uncontradicted, and was before the jury for what it was worth. Possessing prima facie probative value the court below properly denied the motion to exclude all the evidence because of this deficiency, but not insufficiency, in the evidence.

■ After the witness Ralph O. Brown had given his testimony, *without objection,* as to his observation of appellant's condition when he left Hillcrest, some fifteen to twenty minutes before the deceased was killed, the appellant moved that Brown's testimony be excluded because the distance from Hillcrest to the place where deceased was killed destroyed its probative force. This distance was about 7 miles. In view of the short length of time Brown's testimony as to appellant's sobriety when he left Hillcrest possessed valid probative value as to his condition in this regard some fifteen or twenty minutes later. Regardless, the testimony was admitted without objection, and appellant's motion to exclude came too late. See 6 Alabama Digest Criminal Law, ☞ 696 (5).

■ Appellant's refused charge X, being affirmative in nature as to manslaughter in the first degree is rendered abstract by the verdict rendered.

■ Refused charge 1, being affirmative in nature as to manslaughter in the second degree was properly refused under the developed evidence.

■ Appellant's requested charge 1954 (15) was properly refused because misleading and elliptical.

■ Error cannot be predicated on the refusal of appellant's requested charge 1983 (15), as a trial court cannot be put in error for refusing a charge that asserts there is no evidence of a specific fact or state of facts. Anderson v. State, 160 Ala. 79, 49 So. 460; Gunn v. State, 7 Ala.App. 132, 61 So. 468; Bridgeforth v. State, 15 Ala.App. 502, 74 So. 402; Pollard v. Williams, 238 Ala. 391, 191 So. 225.

■ Requested charge N-5 was properly refused because of its misleading and argumentative tendencies, and because it is not couched in the correct and appropriate terms of the law. Hudson v. State, 217 Ala. 479, 116 So. 800. While similar expressions to those incorporated in this charge may be found in the opinion in Carr v. State, 28 Ala.App. 466, 187 So. 252, "It is a mistake to suppose that expressions in judicial opinions, properly there used, can be made to serve as clear, succinct statements of the law in special charges to the jury." Wear v. Wear, 200 Ala. 345, 76 So. 111, 114; Maxwell v. State, 32 Ala. App. 487, 27 So.2d 804, certiorari denied 248 Ala. 431, 27 So.2d 810.

This record is in our opinion free of error injuriously affecting the substantial rights of the accused. It is therefore ordered that the judgment be affirmed.

Affirmed.